IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| LIDAN LIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  4:20-CV-00097-TLS-JPK |
| | ) | |
| THE TRUSTEES OF PURDUE | ) | |
| UNIVERSITY, CARL DRUMMOND, | ) | |
| LACHLAN WHALEN, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

This is not a case about discrimination, harassment or retaliation.  Rather, Plaintiff Lidan Lin, a Purdue University professor, makes bizarre and seemingly irrational allegations regarding those with whom she works and others.  Plaintiff has testified that everyone, including her neighbors and their dogs, are out to get her.  Plaintiff has isolated herself from Purdue faculty and staff, seemingly obsessed with procedural detail, policies, and anyone she has perceived as a professional threat.

Once Plaintiff's speculative, unsupported theories are removed, this Court is left with no evidence that proves, or tends to prove, Dr. Lin was subjected to discrimination, a hostile work environment, or retaliation.  Because there are no material issues of fact, and Plaintiff's claims fail as a matter of law, summary judgment in Defendants' favor is mandated.

1

## II.    SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (mandating summary judgment when this standard is met); *Nehan v. Tootsie Roll Indus., Inc.*, 621 F. App'x 847, 849 (7th Cir. 2015).  To avoid summary disposition, Plaintiff must come forward with "*specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations."  *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) (emphasis in original).  Plaintiff "may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003).  Moreover, Plaintiff's "pro se status doesn't alleviate [her] burden on summary judgment." *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011).

## III.    ARGUMENT AND AUTHORITY

### A.    Plaintiff's Title VII Claim Against Purdue Should Be Dismissed.[1]

#### 1.    Plaintiff's Title VII Claim Must Be Limited To One Discrete Act: Her Non-Selection For The Acting Chairperson Position.

A Title VII plaintiff must first file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory or retaliatory act.  *See* 42 U.S.C. § 2000e-5; *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).  Even after a plaintiff has exhausted her administrative remedies, the administrative framework plays a

---

[1] Plaintiff's Complaint makes clear that her Title VII claim is solely against Purdue.  [*See* Dkt. 59, ¶ 4].  Plaintiff cannot bring claims against Dr. Drummond or Dr. Whalen under Title VII.  *See, e.g., Williams v. Banning,* 72 F.3d 552, 555 (7th Cir. 1995) (holding there is no individual liability under Title VII, reasoning, "a supervisor does not, in his individual capacity, fall within Title VII's definition of employer").

substantial role in focusing the formal litigation it precedes. Indeed, a plaintiff who files an administrative charge does not exhaust every claim – only those within the scope of the Charge. *Chambers v. Am. Trans Air, Inc.,* 17 F.3d 998, 1003 (7th Cir. 1994) ("[T]o prevent circumvention of the EEOC's investigatory and conciliatory role, only those claims that are fairly encompassed within an EEOC charge can be the subject of a resulting lawsuit.").

In her Charge, Plaintiff alleged one discrete act she claims was discriminatory: that on June 19, 2019, she was not selected for an Interim Chair (more accurately referred to as "Acting Chairperson") position.[2] [Plaintiff's Dep., Ex. 1, pp. 72:24-73:14, Dep. Ex. 2]. The entirety of Plaintiff's Charge reads as follows:

> I have been employed by Purdue University for 19 years. I am a tenured full professor in the English Department. In February 2019, I applied for the Interim Chair position for the English Department. I, along with two other tenured associate professors applied for the position. In the posting for the position it stated that tenured full professors would be given preference but was not. On or about June 2019 a decision was made and the position was awarded to tenured Associate Professor, Deborah Huffmann (white). I believe that I have been discriminated against based on my race (Asian) and National Origin (Chinese) which are both violations of Title VII of the Civil Rights Act of 1964 as amended.

[*Id.*]. Therefore, Plaintiff's only timely, exhausted claim that she can pursue in this lawsuit is her non-selection for the Acting Chairperson position. *Brown v. Chicago Transit Auth. Pension Bd.*, 86 F. App'x 196, 198 (7th Cir. 2004) (plaintiff could not pursue a retaliation claim where the charge only alleged sex discrimination and harassment); *Williams v. Illinois Dep't of Hum. Servs.*, No. 21-C-112, 2022 WL 1988988, at *1 (N.D. Ill. June 6, 2022) (plaintiff's discrimination claim was limited to the facts alleged in the charge).

---

[2] Plaintiff refers to the Acting Chairperson position as an Interim Chair position. [Ex. 1, pp. 72:24-73:14, Dep. Ex. 2]. A position is filled on an "interim" basis when an employee in that position separates employment permanently and Purdue has not yet found a permanent replacement. [Carl Drummond Declaration, Ex. 2, ¶ 22]. A position is filled on an "acting" basis when an employee in that position steps away from his/her job duties temporarily. [*Id.*]. Because Dr. Aasand was taking a temporary sabbatical, the more accurate title for the position Purdue sought to fill on a temporary basis is Acting Chairperson. [Ronald Friedman Declaration, Ex. 3, ¶¶ 3-5].

### 2.    Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination.

"To demonstrate a *prima facie* case for failure to [hire], a plaintiff must produce evidence showing that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer [selected] someone outside of the protected class who was not better qualified for the position." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016). If Plaintiff succeeds in demonstrating a *prima facie* case, the burden of production then shifts to Purdue to articulate a "legitimate nondiscriminatory reason" for not selecting Plaintiff. *Id.* at 891. After Purdue has produced evidence of a legitimate, nondiscriminatory reason, the burden shifts back to Plaintiff to demonstrate that Purdue's stated reason is a pretext for discrimination. *Id.* at 892.

Plaintiff cannot demonstrate a *prima facie* case because she cannot show she was better qualified for the temporary Acting Chairperson position than Dr. Huffman. Plaintiff argues that she was the most qualified for the Acting Chairperson position because:

> [B]ased on the initial job announcement, I was more qualified than the other two candidates. I was a full professor when the position was announced. He – the other candidates who applied, one of them was associate professor. The other one was not officially full professor yet. So I was the only full professor among the applicants. And the job announcement clearly states that all, all tenured faculty could apply, but preference is given to a full professor. So based on this job announcement and based on this criteria, I was the most qualified candidate for the interim chair position.

[Ex. 1, pp. 70:10-23, 105:17-21]. However, courts have rejected arguments by plaintiffs that a written job posting is the only valid basis for comparing applicants. For example, in *Jennings v. Nat'l R.R. Passenger Corp.*, No. 97-C-6385, 1998 WL 460270, at *5 (N.D. Ill. July 30, 1998), the defendant argued the plaintiff failed to establish she was more qualified for the position sought, and thus could not meet her *prima facie* burden. The plaintiff countered that "she need[ed] only demonstrate she equaled or surpassed the minimum qualifications listed in [the defendant's]

written job postings to demonstrate a *prima facie* case." *Id.* The plaintiff "insist[ed] the qualifications in the written job posting [were] the only valid basis for comparing her to the applicants selected." *Id.* The court disagreed with the plaintiff, calling the plaintiff's approach "meritless." *Id.* In granting summary judgment for the defendant, the court further explained, "[t]he record contains no support for the assertion that the posted qualifications were intended as exclusive criteria for selection." *Id; see also Murray v. Golden Rule Ins. Co./United Health Corp.*, 23 F. Supp. 3d 938, 953, n.8 (S.D. Ind. 2014) (rejecting plaintiff's position that she was more qualified and holding the employer could rely on subjective criteria outside of a position posting).

Moreover, it is clear "a preferred skill is not equivalent to a prerequisite." *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 527 (S.D.N.Y. 2009) (internal quotations omitted). Accordingly, a plaintiff does not establish a *prima facie* case of discrimination just because she has a preferred skill while the selected candidate does not. *Jimenez* is instructive. In *Jimenez*, the employer's job posting expressed a preference for candidates who were bilingual. *Id.* at 527. The employer hired a candidate who was not bilingual and in support of her discrimination claim, the plaintiff argued she had superior qualifications because she was bilingual. *Id.* The court rejected the plaintiff's argument and granted summary judgment for the defendant, explaining, "[u]nfortunately for plaintiff, employers enjoy unfettered discretion to choose among qualified candidates and to decide which types of credentials are of the most importance for a particular job, and courts defer to employers to select what criteria are important to them." *Id.* at 524, 527; *see also Morgan v. Cnty. Comm'n of Lawrence Cnty.,* No. 5:14-CV-01823-CLS, 2016 WL 3525357, at *36-37 (N.D. Ala. June 20, 2016), *aff'd sub nom.*, 687 F. App'x 787 (11th Cir. 2017) (granting summary judgment on plaintiff's Title VII failure to hire claim, holding the employer's stated preference for internal candidates did not prevent the employer from legitimately deciding that an

external candidate was more qualified); *Banks v. Illinois Cent. R.R. Co.*, No. 18-CV-2506, 2019 WL 3080923, at *8 (N.D. Ill. July 15, 2019) (fact that the plaintiff had a human resources background, which was a listed preference in the job description, did not make the plaintiff more qualified for a position than the selected candidate, who did not have human resource experience).

Here, in order to select the most qualified candidate, Dr. Friedman solicited feedback from English department faculty and staff. [Ex. 3, ¶¶ 6-15, 32-33]. Feedback from faculty and staff regarding Dr. Huffman showed: (1) As the Director of the Writing Center, Dr. Huffman had the most administrative experience with regards to supervision, assessment, personnel evaluation, conflict management and class scheduling; (2) Dr. Huffman had excellent rapport with staff, possessed good communication skills and had very positive interactions with English department faculty; and (3) Dr. Huffman was the most organized and detail-oriented of the three candidates. [Ex. 3, ¶ 34]. Feedback from faculty and staff regarding Plaintiff revealed: (1) Plaintiff lacked administrative leadership roles; and (2) faculty and staff questioned and raised concerns with regard to Plaintiff's organizational skills, rapport with staff and availability. [Ex. 3, ¶ 35]. In contrast to Plaintiff, who taught courses remotely, Dr. Huffman taught classes in-person. [Ex. 1, p. 40:6-11]. Furthermore, Dr. Huffman received 17 first-preference rankings and 3 second-preference rankings, while Plaintiff received 0 first-preference rankings, 1 second-preference ranking, and 14 third-preference rankings. [Ex. 3, ¶ 38].

The skills identified as strengths for Dr. Huffman, and weaknesses for Plaintiff, were important in performing the duties of the Acting Chairperson and demonstrate that Dr. Huffman was more qualified for the position. For example, because the Acting Chairperson would be responsible for performing administrative tasks, administrative experience was valued. [Ex. 3, ¶ 8]. The Acting Chairperson was also a leadership role, so experience managing personnel and

getting along with faculty and staff was critical.  [Ex. 3, ¶ 8].  Dr. Friedman appreciated and considered faculty and staff input for this reason.  [Ex. 3, ¶¶ 31-33].  Organizational skills were also important because the Acting Chairperson would need to effectively manage time in order to complete various tasks in a timely manner.  [Ex. 3, ¶ 8].

It is undisputed that these skills and qualities were important.  Indeed, Plaintiff admits, and it is therefore undisputed, that the Acting Chairperson needed to be collegial, have good communication skills, and be respected by and get along with other members of the English department.  [Ex. 1, pp. 76:13-77:7, 80:2-5].  Plaintiff further concedes the Acting Chairperson's responsibilities included addressing administrative matters, but that Plaintiff lacked administrative experience.  [Ex. 1, pp. 85:13-86:1].

In short, Plaintiff's subjective belief that she was more qualified is insufficient to establish a claim of discrimination and Purdue is entitled to summary judgment.  *See Armstrong v. City of Milwaukee*, 204 F. App'x 559, 563 (7th Cir. 2006) ("[S]elf-serving assertions carry no evidentiary value when attempting to prove racial discrimination."); *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 787 (7th Cir. 2001) (affirming summary judgment for defendant on plaintiff's failure to promote claim and explaining that "even if a plaintiff's personal appraisal contains true statements about his accomplishments, an employer is entitled to determine that the deficiencies in his performance outweighed such accomplishments"); *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (affirming summary judgment for the employer and explaining that courts do not sit as a super personnel review board that second-guesses an employer's facially legitimate business decisions); *Perkins v. G.E. Cap. Auto Fin. Servs., Inc.*, 6 F. App'x 320, 327 (7th Cir. 2001) ("The relative merits of each candidate and the subjective impressions they conveyed to the decision-

maker are the kind of facially legitimate employment decisions that federal courts will not reexamine.").

### 3. Purdue Had A Legitimate, Non-Discriminatory Reason For Its Selection Decision And Plaintiff Cannot Demonstrate Pretext.

Even if Plaintiff could establish a *prima facie* case (she cannot), Plaintiff's claim still fails because she cannot show that Purdue's selection of the candidate whom it deemed most qualified – following a comprehensive selection process – is pretext for discrimination. In order to show pretext, Plaintiff must demonstrate that Purdue's proffered reason for selecting Dr. Huffman for the Acting Chairperson position is "a lie or completely lacks a factual basis." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). "Even if the reasons for [Plaintiff's] non-selection were mistaken, ill considered or foolish, so long as [Purdue] honestly believed those reasons, pretext has not been shown." *Id.* "Basically, to meet her burden here, [Plaintiff] must present evidence to suggest not that [Purdue] was mistaken in denying her [the position] but that it was lying in order to cover up the true reason." *Id.* The Seventh Circuit Court of Appeals has further elaborated on the high standard a plaintiff must meet in order to show pretext in a failure to hire case:

> [W]here an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext 'unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.' In other words, '[i]n effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'

*Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180-81 (7th Cir. 2002) (emphasis added).

Plaintiff can clearly make no such showing here in light of the assessment received from English department faculty and staff resoundingly pointing to Dr. Huffman as the more-qualified candidate. [Ex. 3, ¶¶ 8, 29-42 and Exhibits thereto]. Again, faculty and staff noted that Dr.

Huffman had the most administrative experience with regards to supervision, assessment, personnel evaluation, conflict management and class scheduling; had excellent rapport with staff, possessed good communication skills and had very positive interactions with English department faculty; and was the most organized and detail-oriented of the three candidates.  [Ex. 3, ¶ 34; Ex. 1, pp. 81:10-85:12].   In contrast, the undisputed evidence shows that Plaintiff had a lack of administrative leadership roles; and faculty and staff questioned her organizational skills, rapport with staff and availability.  [Ex. 3, ¶ 35; Ex. 1, pp. 85:13-86:20].  The undisputed evidence also shows that the job duties of the Acting Chairperson require administrative experience, including the managing of personnel and getting along with faculty and staff, and having good organizations skills.  [Ex. 3, ¶¶ 8, 32; Ex. 1, pp. 76:13-77:7, 80:2-5, 85:13-86:1].  Plaintiff further admits she has no reason to dispute the legitimacy of the survey rankings of English department faculty in which Dr. Huffman received 17 first-preference rankings while Plaintiff received zero.  [Ex. 1, pp. 80:23-81:9].  Plaintiff has no facts which contradict Purdue's proffered reason for its hiring decision.

Further, Plaintiff has no evidence of race or national origin-based animus by the decision-makers.  To the contrary, Plaintiff testified that Dr. Freidman, who made the recommendation to offer the position to Dr. Huffman, has never said anything to her that she thought was offensive.  [Ex. 1, pp. 68:22-69:2].  Nor has Plaintiff identified any statement or comment from Dr. Friedman or Vice Chancellor Drummond, who supported the hiring decision, related to national origin or race.  [Ex. 1, pp. 57:14-58:13, 68:22-69:14].  Plaintiff has offered nothing more than conjecture in support of her claim of discrimination against Purdue, and Plaintiff's "own suspicions are not good enough."  *Ridge v. Indiana Univ. Health Arnett, Inc.*, 350 F. Supp. 3d 707, 722 (N.D. Ind. 2018) (granting summary judgment for defendant on plaintiff's discrimination claim because the plaintiff

presented no evidence of discriminatory animus by any decision-maker).  Accordingly, Plaintiff's

Title VII sole claim of discrimination against Purdue should be dismissed.

**B.      Plaintiff's Section 1981 Claims Against Dr. Drummond And Dr. Whalen Should Be Dismissed.[3]**

      **1.      Any Alleged Discrimination, Harassment Or Retaliation Occurring Prior To December 18, 2016 Is Time-Barred.**

"Section 1981 claims must be filed within four years of the alleged discriminatory act."

*Riley*, 829 F.3d at 891.  Plaintiff did not file suit until December 18, 2020.  [Dkt. 1].  Therefore,

any alleged discrimination, harassment or retaliation occurring prior to December 18, 2016 is time-

barred.  *Id.; Gupta v. Madison Metro. Sch. Dist.,* 120 F. App'x 641, 643 (7th Cir. 2005) (dismissing

the plaintiff's discrimination claim under § 1981 because the alleged discriminatory conduct

occurred more than four years prior to the filing of the plaintiff's suit).

Plaintiff alleges that she has been subject to discrimination, harassment and retaliation

"since 2014."  [Dkt. 59-2, p. 1, ¶ 4].  Plaintiff believes that Vice Chancellor Drummond

discriminated against her by initiating and approving Dr. Whalen's hire into the English

department in 2014.  [Ex. 1, pp. 13:19-14:3, 193:16-23].  Moreover, Plaintiff maintains that after

she "expressed [] concerns about Dr. Whalen's hire," Dr. Whalen's "harassment and stalking

became worse" and that this alleged retaliatory harassment "lasted well into 2015."  [Ex. 1,

pp. 28:15-29:10].  These claims should be dismissed because they are time-barred.

---

[3] Plaintiff's Complaint makes clear that her § 1981 claims are brought against Dr. Drummond and Dr. Whalen, not Purdue.  [*See* Dkt. 59, ¶ 5].  Plaintiff cannot bring claims against Purdue under § 1981, because "Purdue University and its Board of Trustees are state entities immune to suit" under the Eleventh Amendment.  *Tyler v. Trustees of Purdue Univ.*, 834 F. Supp. 2d 830, 845 (N.D. Ind. 2011); *Baker v. Indiana Fam. & Soc. Servs. Admin.*, 260 F. Supp. 2d 731, 737 (S.D. Ind. 2003) ("Well-settled case law makes it clear that Congress has not abrogated state sovereign immunity with respect to §§ 1981 and 1983.  Furthermore, actions under § 1983 do not lie against a State because they are not considered 'persons' for purposes of the statute.").

**2.    Plaintiff Cannot Show That Dr. Whalen Or Dr. Drummond Harassed, Discriminated Or Retaliated Against Her.**

"Individual liability under section 1981 can be found only where the individual himself has participated in the alleged discrimination against the plaintiff." *Behnia v. Shapiro*, 961 F. Supp. 1234, 1237 (N.D. Ill. 1997) (citing *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 753 (7th Cir. 1985) (to recover damages under section 1981, a plaintiff must always prove that the defendant intentionally discriminated against him)).  Indeed, "[i]n order to state a claim under section 1981 against the defendant in his individual capacity, the plaintiff must sufficiently allege that the defendant himself possessed an 'intent to discriminate on the basis of race.'"  *Id.* (internal quotations omitted); *see also Guster-Hines v. McDonald's USA, LLC*, No. 20-CV-00117, 2021 WL 2633303, at *11 (N.D. Ill. June 25, 2021) (citing *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) ("§ 1981 countenances individual liability only where the individual was personally involved in the acts of discrimination")).  Plaintiff has no evidence that Dr. Whalen or Dr. Drummond were personally involved in any harassment, discrimination or retaliation against her.

**a.    Plaintiff Was Not Subjected To A Hostile Work Environment.**

"To be actionable under § 1981, harassment must be: (1) based on race;[4] (2) subjectively and objectively hostile; and (3) sufficiently severe or pervasive to interfere with an employee's ability to perform [her] assigned duties."  *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004).  Plaintiff's hostile work environment claim is unique in that it concerns only "nonverbal expressions" and "body language."  [Ex. 1, pp. 15:13-18, 20:23-21:3].  With respect

---

[4] "Section 1981 forbids racial discrimination . . . It does not create a cause of action for discrimination based purely on national origin."  *Sauceda v. Cent. Pool Supply, Inc.*, No. 4:14-CV-04053-SLD-JEH, 2015 WL 428167, at *2 (C.D. Ill. Jan. 30, 2015) (citing *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993)).  Even if § 1981 covered national origin, Plaintiff's national origin claim fails for the same reasons as her race claims, as discussed herein.

to Dr. Whalen, Plaintiff maintains that Dr. Whalen harassed, stalked, and intimidated her.  [Ex. 1,

p. 9:23-25].  Plaintiff defines these terms in the following ways:

> **Q.**  So going back to the first item that you identified, harassment by Lachlan Whalen, specifically, what do you claim that Lachlan Whalen did to harass you?
> **A.**  He frequently stalked me on campus, used his body language, such as facial expressions, look in his eyes to express intimidation, and I feel it was, like, hatred.
>
> &ast;&ast;&ast;
>
> **Q.**  [W]hat did you identify as stalking by Dr. Whalen?
> **A.**  As I, as I mentioned, he frequently use – used his body language, his facial expression, which was very clear to me, which that, that was directed at me.
>
> &ast;&ast;&ast;
>
> **Q.**  And when you say the stalking – and I'm focused only on Dr. Whalen – that means that you think he was giving you dirty looks?
> **A.**  Yes.
>
> **Q.**  And he was walking forcefully around you?
> **A.**  Yes.

[Ex. 1, pp. 10:7-14, 15:13-18, 29:11-22].

Plaintiff makes clear that Dr. Whalen never made any race or national-origin based

comments towards her; in fact, they do not speak to one another:

> **Q.**  Did you ever talk to Dr. Whalen?
> **A.**  No.
>
> **Q.**  Have you – have you ever spoken directly with Dr. Whalen?
> **A.**  I don't remember.  I don't remember, unless it was at the department meetings, responding to some issues, questions.
>
> **Q.**  Why don't you talk to Dr. Whalen?
> **A.**  Because he never talked to me.
>
> &ast;&ast;&ast;
>
> **Q.**  Did Dr. Whalen ever say anything to you that you – or in your presence that you found offensive or discriminating or harassing?
> **A.**  I don't remember.

Q.    Have you heard Dr. Whalen say anything in relation to your national origin, or anybody else's?

A.    I don't remember.

Q.    So as you sit here today, you can't recall him ever saying anything like that?

A.    I can't recall it.

Q.    So if he doesn't talk to you, and you don't talk to him, and you don't see him, you, walking or having facial expressions around other people, what do you consider stalking from Dr. Whalen?

A.    Because he, he, and I would indicate, other harassing allies, they used the nonverbal language.

***

Q.    And I want to know what you identify as harassing behavior from Dr. Whalen, whom you have individually sued, and I just want to make sure I understand, that it doesn't go beyond nonverbal communication, facial expression, and the way he walks; is that true?

A.    Yes.

Q.    And that's what you call stalking; correct?

A.    Yes.

Q.    Is there anything else that you call stalking that Dr. Whalen specifically, in words or actions, has done that you're claiming in this lawsuit.

A.    No.

[Ex. 1, pp. 19:4-12, 19:23-20:16, 23:15-24:15].

With respect to Vice Chancellor Drummond, it is unclear whether Plaintiff alleges that he personally harassed her. Rather, Plaintiff says Dr. Drummond "incited" harassment. [Ex. 1, p. 57:14-21]. Plaintiff's testimony on this point is difficult to follow:

Q.    … these injuries that you have photographed and put into the discovery record, what did they come from?

A.    From my own photos.

Q.    When were the injuries sustained, and how?

A.    I fell. I was taking a walk in my neighborhood, and because of the harassment, ongoing harassment situation, I was forced to stay alert, and I was forced to worry about potential harassers, potential stalkers. So I was constantly being distracted by these thoughts, and as a result of these distracting thoughts, and the worry, I just fell. And I badly hurt myself. And it took, it almost took three weeks, it almost took three weeks for the injuries to recover.

**Q.**    Did that happen in San Diego[5] or Indiana?
**A.**    In my neighborhood.

**Q.**    In Fort Wayne?
**A.**    Yes.  And I was almost bit several times by dogs as I was taking – as I was taking a walk in the neighborhood, very dangerous situation.  I had to call the police many times when – well, dogs were not supposed to – are not supposed to be outside, but there were dogs attacking me many times when I was walking in the neighborhood.  I called 311 (sic) many times.  So these things made me feel, you know, fearful, even when I had, I had to carry, I had to carry sticks because I was really afraid of dogs.  At some point, I used some sticks when I was out walking because I was afraid that the dogs would attack me.

**Q.**    What does that have to with your lawsuit against Purdue and my other clients?
**A.**    Well, because of the stressful, hostile situation created by or triggered incite – triggered by the Lachlan Whalen hire and incited by Vice Chancellor Drummond.  He knew this would happen to me, and he intentionally made the decision that exactly resulted in making me a very horrible victim.

[Ex. 1, pp. 185:1-186:17].

Plaintiff further takes issue with the fact that Dr. Drummond showed up at university activities and, allegedly, Kroger while she was shopping.  [Ex. 1, pp. 58:4-13, 202:11-16].[6]  As with Dr. Whalen, Plaintiff's allegations about Dr. Drummond concern nonverbal expressions. Indeed, Plaintiff admits that while attending university activities and grocery shopping at Kroger, allegedly, Dr. Drummond did not talk to her.  [Ex. 1, p. 60:9-15].  For multiple reasons, these allegations are insufficient to demonstrate a hostile work environment.

Notably, the Seventh Circuit Court of Appeals has cautioned that allowing a harassment claim to proceed to a jury based on "nebulous impressions concerning tone of voice, body language, and other non-verbal, non-touching modes of signaling" would require persons to act

---

[5] During the pandemic, Plaintiff lived in San Diego for certain periods.  [Ex. 1, pp. 38:19-40:11].

[6] Although, Plaintiff admits she cannot be sure that Dr. Drummond was at Kroger the same time as her, but she "suspected it was him" because the person she saw at Kroger, who was wearing a mask, "was a white male which about the same, you know, his, his figure, about the same height."  [Ex. 1, pp. 202:11-203:10].

with "perfection, and the aims of [the law] are more modest." *Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 858 (7th Cir. 1999) (affirming summary judgment for defendant where plaintiff argued that alleged harasser used a "sexy voice").[7]  Moreover, Plaintiff has not provided evidence that any of the alleged nonverbal acts by Dr. Whalen or Dr. Drummond were racially motivated. *See, e.g.*, *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 346 (7th Cir. 1999) (granting summary judgment on plaintiff's § 1981 claim because alleged nonverbal harassment did not have racial overtones); *Whitlow v. Bradley Univ.*, No. 1:16-CV-01223-JBM-JEH, 2017 WL 3521639, at *6 (C.D. Ill. Aug. 16, 2017) ("Although these examples may have been deeply unpleasant to Plaintiff, [§ 1981] does not protect against any and all harassment, rather it must be because of Plaintiff's [race].").  Finally, even if Plaintiff could show that the alleged nonverbal harassment was motivated by race or national origin, the conduct of which Plaintiff complains is not sufficiently severe or pervasive to create a hostile working environment.  As explained in *Hardin*, Section 1981 does not create liability where the "alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her [race]." *Hardin*, 167 F.3d at 346 (internal quotations omitted); *see also Fidishin v. Gary Cmty. Sch. Corp.*, No. 2:18-CV-97-TLS, 2018 WL 6251318, at *4 (N.D. Ind. Nov. 29, 2018 (nonverbal harassment was not sufficiently severe to give rise to a hostile work environment claim).

Because Plaintiff cannot establish that she was subjected to any harassment on the basis of race (or national origin), or that she was subjected to any harassment that was objectively and sufficiently severe, Plaintiff's § 1981 hostile work environment claims should be dismissed.

---

[7] *Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 858 (7th Cir. 1999), involved a claim under Title VII.  Claims of race discrimination, retaliation and racial harassment under § 1981 are evaluated "under the same rubric as Title VII claims." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004).

**b.**    **Plaintiff Was Not Discriminated Against.**

As an initial matter, Plaintiff has not identified any allegedly discriminatory act by Dr. Whalen.  Rather, Plaintiff is upset that after Dr. Whalen was hired more than 7 years ago, some of her courses were supposedly given to him.  [Ex. 1, pp. 24:16-27:24].  But, Dr. Whalen had no involvement in assigning courses to himself or Plaintiff following his hire.  [Ex. 1, pp. 26:13-27:9, 57:14-20].  Therefore, Dr. Whalen cannot be held responsible for these decisions.  *Behnia*, 961 F. Supp. at 1237 (citing *Musikiwamba,* 760 F.2d at 753); *Guster-Hines*, 2021 WL 2633303 at *11 (citing *Smith*, 681 F.3d at 896).

Turning to Vice Chancellor Drummond: to succeed on her § 1981 discrimination claim against Dr. Drummond, Plaintiff must "prove that, but for race, [she] would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  Plaintiff argues Dr. Drummond discriminated against her by virtue of his involvement in the selection of Dr. Huffman as the Acting Chairperson and Dr. Whalen as the Editor-in-Chief of *Clio*.  [Ex. 1, pp. 193:16-194:2].  Because Plaintiff's Title VII failure-to-hire claim fails, as discussed in Sections III(A)(2) and (3) herein, Plaintiff's § 1981 failure-to-hire claim with respect to the Acting Chairperson position against Dr. Drummond likewise fails.  *Ekekhor v. AON Serv. Corp.*, No. 05C99, 2006 WL 2349982, at *4 (N.D. Ill. Aug. 9, 2006) (failure-to-hire claims under Title VII and § 1981 are analyzed the same).  Similarly, Plaintiff's claim that she was discriminated against when Dr. Whalen was awarded the *Clio* Editor-in-Chief position is subject to dismissal, because she cannot show that she was more qualified for the Editor-in-Chief position, nor is there any evidence that Dr. Whalen was selected because of race.

In seeking an Editor-in-Chief, Dr. Drummond and Dr. Hile preferred a tenured faculty member with previous editorial experience and whose research fit the remit of *Clio*.  [Ex. 2, ¶¶ 14-19].  Both Plaintiff and Dr. Whalen were tenured faculty members, had interdisciplinary research

programs that fit the remit of *Clio* (literature and history), and some editorial experience.  [*Id.*].  However, Dr. Whalen had additional professional experience, in addition to peer-reviewing, that Dr. Hile and Vice Chancellor Drummond thought would help him communicate with the managing editor and the printer.  [*Id.*].  Specifically, Dr. Whalen had previously served as an editorial board member of *Native Directions*, a Native American-focused magazine housed at the University of North Dakota.  [*Id.*].  As an editorial board member, he assisted with every aspect of the periodical, from coming up with issue themes, to soliciting, writing, and editing articles, to creating the actual layout of individual issues.  [*Id.*].  Dr. Whalen also worked with authors at all stages of the submission and revision process.  [*Id.* at ¶ 14].  Moreover, Dr. Whalen had many years of administrative experience as Director of International Studies that Dr. Hile and Dr. Drummond believed gave him skills that would transfer in significant ways to the role of Editor-in-Chief, while Plaintiff had no administrative experience.  [*Id.* at ¶ 18].  Because of Dr. Whalen's professional and administrative experience, Dr. Drummond agreed that Dr. Whalen was more qualified for the Editor-in-Chief position.  [*Id.* at ¶ 19].

Nonetheless, Plaintiff argues that she was better-qualified for the position than Dr. Whalen because she had more publications in certain academic journals, was a full professor, and had been with Purdue longer.  [Ex. 1, pp. 91:4-92:12].  Plaintiff admits that she did not have years of administrative experience like Dr. Whalen, but says she didn't "personally consider it necessary." [Ex. 1, p. 95:13-21].  However, Plaintiff's "own opinion that she was more qualified is not enough to defeat summary judgment."  *Ragsdale v. Beacon Health Sys., Inc.*, No. 3:18-CV-183-PPS, 2020 WL 1849403, at *5 (N.D. Ind. Apr. 13, 2020); *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996) ("a plaintiff's own opinions about her work performance or

qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions").

Even so, Plaintiff has no evidence that Dr. Whalen was selected for the Editor-in-Chief position because of race. When pressed on what proof she has of discrimination, Plaintiff testified:

> Because Whalen was, obviously, less qualified than I was. I had considerably better qualifications that he was, historically, based how Clio editor position was served, and also based on these facts, how academic journals were manage – were, were managed. So I could not think of any reasonable reasons why they did not offer the job to me. I could only conclude their motive was discrimination.

[Ex. 1, p. 97:4-12]. Again, "Plaintiff's self-serving assessment of her own abilities is not sufficient to defeat summary judgment absent any other proof." *Liner v. Dontron Inc.*, No. 99 C 1261, 2000 WL 1648960, at *4 (N.D. Ill. Oct. 27, 2000), *aff'd,* 9 F. App'x 523 (7th Cir. 2001) (citing *Schultz v. General Elec. Corp.*, 37 F.3d 329, 334 (7th Cir. 1994)); *Thomas v. DeJoy*, No. 18 C 7856, 2021 WL 1088324, at *9 (N.D. Ill. Mar. 22, 2021) ("A plaintiff challenging a failure to promote can defeat summary judgment only if the evidence shows that the differences between plaintiff and the chosen candidate were so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was *clearly better qualified* for the position at issue. Further, "[a]n employee's own opinions about [his] ... qualifications [do not] give rise to a material factual dispute.") (internal citations omitted) (emphasis in the original).

In short, "in determining which individual was better qualified to occupy the managerial position, [Dr. Drummond] was required to make a calculated business decision by weighing the relative merits and deficiencies of both candidates." *Dunn*, 260 F.3d at 787. The Seventh Circuit Court of Appeals has "repeatedly emphasized, it is not [the court's] job to sit in judgment of a defendant's personnel department and second-guess its business decisions." *Id.*

### c. Plaintiff Was Not Retaliated Against.

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two. *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 413 (7th Cir. 2018). Plaintiff maintains that after she "expressed [] concerns about Dr. Whalen's hire," Dr. Whalen's "harassment and stalking became worse." [Ex. 1, pp. 28:15-29:10]. Plaintiff further theorizes that Vice Chancellor Drummond appointed "Janet Badia as the Dean" in retaliation for Plaintiff's "opposition to [the] Whalen hire" in 2014. [Ex. 1, pp. 113:2-11, 193:16-194:2]. As it concerns both Dr. Whalen and Vice Chancellor Drummond, Plaintiff testified, "anything happened that, that was retaliatory, was connected with the Whalen hire." [Ex. 1, p. 112:2-3]. Based on these facts, Plaintiff's retaliation claims fail for several independent reasons.

First, Plaintiff's claim against Dr. Whalen, which she attributes to harassment lasting "well into 2015," is time-barred, as described above. [Ex. 1, p. 29:1-8]. Second, Plaintiff's opposition to the hire of Dr. Whalen is not statutorily-protected activity. Section 1981 prohibits retaliation "for opposing discriminatory practices that the statute[] proscribe[s]." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). In other words, protected activity under § 1981 consists of taking some step in opposition to race discrimination. *Id.* However, Plaintiff did not express concerns of racial discrimination in connection with her opposition to Dr. Whalen's hire. Rather, Plaintiff opposed Dr. Whalen's hire because "his areas and [hers] overlap" and she was worried that his hire would result in him teaching courses that she would usually teach. [Ex. 1, pp. 18:4-15, 35:8-17, 133:25-134:24, 135:1-7, 195:13-22, Dep. Exs. 14, 15, 16, 76]. For this reason alone, Plaintiff's retaliation claim fails. *See Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) (employee's complaints concerning general displeasures about pay not protected activity); *Curtis v. Earnest Mach. Prod. Co.*, No. 1:11-CV-0951-TAB-JMS, 2012 WL

5879439, at *2 (S.D. Ind. Nov. 20, 2012) (general complaints about the employer's practices and conduct not protected activity).

Moreover, Plaintiff has offered no proof that her opposition to Dr. Whalen's hire caused her to suffer any adverse employment action. Again, Plaintiff maintains that after she opposed Dr. Whalen's hire, his alleged harassment and stalking became worse. But, harassment is only an adverse employment action if it is "sufficiently severe." *Straub v. Jewel Food Stores, Inc.*, No. 17 C 6401, 2018 WL 4512060, at *4 (N.D. Ill. Sept. 20, 2018). By way of illustration, in *Wren v. Chrysler Grp., LLC*, No. 1:13-CV-00026-SEB, 2015 WL 1417795 (S.D. Ind. Mar. 27, 2015), the plaintiff argued that she was retaliated against by a coworker who intimidated her with his presence in common areas, although plaintiff did not speak or have physical interaction with the coworker. *Id.* at *11. The court granted summary judgment for the defendant, reasoning, the coworker's "continued presence in the workplace, falls considerably short of causing a 'significant change' in Plaintiff's employment status." *Id.* at *12. Similarly, in *Bethea v. LaSalle Bank, N.A.*, 287 F. Supp. 2d 877, 881 (N.D. Ill. 2003), the court dismissed the plaintiff's retaliation claim because the plaintiff's claims "which consist[ed] of petty slights and normal workplace frictions" did "not support a finding that she was subject to a hostile work environment." "Thus, she fail[ed] to establish that she suffered a materially adverse employment action following her discrimination complaint, and her retaliation claim therefore [could not] stand." *Id.* As thoroughly discussed above, Plaintiff was not subjected to a hostile work environment and, therefore, she cannot establish retaliation by Dr. Whalen. *Mlynczak v. Bodman*, 442 F.3d 1050, 1061 (7th Cir. 2006) (affirming dismissal of the plaintiff's retaliation claim because coworkers' staring and shunning of the plaintiff was not an adverse employment action); *Stutler v. Illinois Dep't of Corr.*, 263 F.3d

698, 703 (7th Cir. 2001) (retaliatory harassment must be severe enough to cause a significant change in the plaintiff's employment status to be actionable).

Nor is Dr. Drummond's appointment of Dr. Badia an adverse employment action against Plaintiff. It is clear that "[n]ot every workplace slight is actionable." *Mlynczak*, 442 F.3d at 1061 ("[M]ere unhappiness and inconvenience are not actionable.") (internal quotations omitted). With respect to Dr. Badia's appointment, Plaintiff admits she did not apply for the Dean position that Dr. Badia received, and after Dr. Badia's appointment, Plaintiff maintained her employment as a tenured full professor and continues to teach courses that she previously taught. [Ex. 1, pp. 189:4-191:16]. Thus, Plaintiff fails to explain how Dr. Badia's appointment resulted in "significant change [to her] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stutler*, 263 F.3d at 703.[8]

Finally, even if Plaintiff could establish that she suffered an adverse employment action at the hands of Dr. Whalen or Vice Chancellor Drummond, Plaintiff offers no facts to support a causal connection between the alleged adverse act and her opposition to Dr. Whalen's hire. "When an employee's protected conduct is separated by a significant period of time from the adverse employment action, the proximity of the incidents does not support a causal connection between them." *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011). Here, there is an approximate 7-year time span between Plaintiff's opposition to the hire of Dr. Whalen

---

[8] Plaintiff also maintains that Dr. Badia's appointment was discriminatory. Dr. Badia's appointment is not an adverse action against Plaintiff and so it cannot support a discrimination claim. *See Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (a *prima facie* case of discrimination requires the plaintiff to show: (1) she is a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably). Nor does Plaintiff allege that Dr. Badia's appointment resulted in employees outside of the protected class being treated more favorably.

and Dean Badia's appointment.  [Ex. 2, ¶¶ 12, 13, 36-38].  Courts have granted summary judgment in cases involving a much closer series of events.  *Leonard v. E. Illinois Univ.*, 606 F.3d 428, 432 (7th Cir. 2010) (finding adverse employment action six months after protected conduct insufficient to establish retaliation claim); *Brown v. Bartholomew Cnty. Ct. Servs.*, No. 1:13-CV-01824-RLY, 2015 WL 5553902, at *6 (S.D. Ind. Sept. 21, 2015) ("[T]his court, like the Seventh Circuit in *Tomanovich,* finds that a period of four months (or three months, as Plaintiff asserts) between a protected activity and an adverse action is a significant gap in time.").[9]

For each of these reasons, Plaintiff's retaliation claims should be dismissed.

## IV.    CONCLUSION

Plaintiff maintains that her objection to Dr. Whalen's hire into the English department in 2014 served as "some kind of a catalyst" to bond Purdue staff, Purdue faculty, her neighbors, and their dogs together against Plaintiff, resulting in years of "stalking" and "harassment."  [Ex. 1, pp. 54:2-55:5, 61:9-63:23, 65:10-23, 66:8-15, 154:14-160:20].  This is "an *exceedingly* improbable plot."  *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989) (emphasis in original).  Because Plaintiff offers nothing more than conjecture and conspiracy theories in support of her claims, Defendants respectfully request that summary judgment be entered in their favor, and that Plaintiff's Complaint be dismissed in its entirety with prejudice.  *See id.* at 1573.

---

[9] To the extent Plaintiff maintains that she was subjected to harassment after December 18, 2016 in retaliation for her opposition to Dr. Whalen's hire in 2014, this time gap likewise forecloses a claim of retaliation.

Respectfully submitted,

*/s/ Kathleen M. Anderson*
Kathleen M. Anderson
**BARNES & THORNBURG LLP**
888 South Harrison Street, Suite 600
Fort Wayne, IN  46802
Telephone:	(260) 423-9440
Facsimile:	(260) 424-8316
Email:	Kathleen.Anderson@btlaw.com

ATTORNEY FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

On this 11th day of December, 2023, a copy of the foregoing was emailed and mailed to

Plaintiff, *pro se*:

Lidan Lin
11355 Affinity Court, #190
San Diego, CA  92131
llin3000@yahoo.com
anetida2121@yahoo.com

*/s/Kathleen M. Anderson*
Kathleen M. Anderson

DMS 41040097.2